**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 19, 2019**

# In the Court of Appeals of Georgia

A19A1370. TANKSLEY v. THE STATE.

COOMER, Judge.

After a jury trial, Samoney Tanksley, who was 15 years old at the time of the alleged offenses, was convicted of armed robbery, aggravated assault, burglary in the first degree, and possession of a firearm during the commission of a crime. Tanksley filed a motion for new trial, which the trial court denied. On appeal, Tanksley contends that the trial court erred by admitting her statement to law enforcement into evidence because the legal requirements for a juvenile *Miranda*[1] waiver were not met. We agree and reverse.

Tanksley's indictment arose from an armed robbery on March 5, 2014. Tanksley's sister, Keoshamine Lydasia Nero, pretended to be sexually interested in

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

the victim to gain entry to his home and, once inside, apparently unlocked the door, allowing four people with a handgun to enter the victim's bedroom, where they forced him into a closet, shot at him, and robbed him.

On March 7, 2014, an investigator with the Richmond County Sheriff's Office interviewed one of Tanksley's co-defendants, Daeshun Ellis, who implicated Tanksley in the March 5 armed robbery. Tanksley was already at the Richmond County Sheriff's Office because she had been brought in for questioning as a potential witness for an unrelated crime, the murder of her cousin. After interviewing Ellis, the investigator questioned Tanksley about the March 5 armed robbery. During the interview, Tanksley implicated herself in the armed robbery.

Tanksley was indicted and charged with armed robbery, aggravated assault, burglary in the first degree, and possession of a firearm during the commission of a crime. Before trial, the court conducted a *Jackson-Denno*[2] hearing. After reviewing the video of Tanksley's statement to the investigator, the trial court found that her statement was admissible. The trial court found "from a preponderance of the evidence that the defendant was advised of each of her *Miranda* rights, that she

_____

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

2

understood them, that she voluntarily waived them, and that she thereafter gave her statement freely and voluntarily without hope of benefit or fear of injury."

A jury found Tanksley guilty on all charges. Tanksley filed a timely motion for new trial, which the trial court denied. This appeal followed.

In her sole enumeration, Tanksley contends that the trial court erred by admitting her statement to law enforcement into evidence because the legal requirements for a juvenile waiver were not met.[3] We agree.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial. When not made freely and voluntarily, a confession is presumed to be legally false and cannot be the underlying basis of a conviction. To make a confession admissible, it must have been made voluntarily, i.e., without being induced by another by the slightest hope of benefit or remotest fear of injury. The State bears the burden of demonstrating the voluntariness of a confession by a preponderance of the evidence.

> . . .

> Confessions of juveniles must be scanned with more care and received with greater caution than those of adults. The question of a voluntary

---

[3] See *Benton v. State*, 302 Ga. 570, 572 (2) n. 5 ("it has long been the law in this State that the rule as to the admissibility of an incriminatory statement is the same as that applied to a full confession." (citation omitted)).

and knowing waiver depends on the totality of the circumstances, and the State has a heavy burden in showing that the juvenile did understand and waive [her] rights.

*Swain v. State*, 285 Ga. App. 550, 551-552 (647 SE2d 88) (2007) (citations and punctuation omitted).

"Unless clearly erroneous, a trial court's factual and credibility determinations related to the admissibility of a confession will be upheld on appeal." *State v. Roberts*, 273 Ga. 514, 514 (1) (543 SE2d 725) (2001) (citation omitted), overruled on other grounds by *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008). In this case, the relevant facts are undisputed. The only person who testified at the *Jackson-Denno* hearing about Tanksley's interview was the investigator who conducted the interview. A recording of Tanksley's interview was admitted into evidence at the *Jackson-Denno* hearing, and counsel consented to the trial court reviewing the video after the hearing. The recording of the interview is demonstrative, objective proof of the circumstances surrounding Tanksley's statement. *Roberts*, 273 Ga. at 514-515 (1). Therefore, the question to be resolved is whether the trial court erred in its legal conclusion that, based upon this undisputed evidence, Tanksley's statement was admissible. *Id.* at 515 (1). "In resolving this issue,

4

it is the duty of this Court to independently review the evidence to determine whether the State has carried its burden of proving the admissibility of [Tanksley's statement] by a preponderance of the evidence." *Id.* at 515 (1) (citations and punctuation omitted). Accordingly, we have considered the transcript of the *Jackson-Denno* hearing and have viewed the video of the interrogation itself. *Id*. at 515 (1).

This Court must consider the following factors in determining whether a juvenile's custodial statement was voluntarily and knowingly given:

> (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of [her] rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date.

*Riley v. State*, 237 Ga. 124, 128 (226 SE2d 992) (1976) (citations and punctuation omitted). "A parent's presence, although not required, is a significant factor in support of a finding of waiver." *Norris v. State*, 282 Ga. 430, 431 (2) (651 SE2d 40) (2007) (citation omitted).

The record shows that, at the time of questioning, Tanksley was 15 years old, and that she had dropped out of the ninth grade. When the investigator first came in to question her, he said "You think I am going to talk to you about one thing, but actually I'm going to talk to you about something else." The investigator informed Tanksley of her *Miranda* rights, but he did so by reading an adult *Miranda* waiver form even though he had juvenile *Miranda* waiver forms available. After he read Tanksley her *Miranda* rights, the investigator asked "You want to talk to me about what I want to talk to you about?" After Tanksley initialed and signed the *Miranda* waiver form, he told her that he wanted to talk to her about "what happened Tuesday night at the apartments on Wrightsboro Road - goin' in on the white dude - know what I'm talking about?" She shook her head negatively. He then told her that he already knew what happened but wanted to give her the opportunity to give her side of the story. The investigator told Tanksley that he knew that Tanksley did not pull the gun and that Ellis had pulled the trigger. Tanksley was initially non-responsive, but eventually acknowledged that she had been with the people the investigator had identified as being involved in the armed robbery. When the investigator asked Tanksley who had the gun, she responded, "You know." When the investigator asked her where she was when the idea came up to go over to the victim's house, Tanksley

told him that she and the other people he had named were just riding around in a car. The investigator did not explain to Tanksley the substance of the prospective charges against her until after he had questioned her about the armed robbery.

Tanksley did not have a parent present during the interview. The investigator did not offer to contact any of Tanksley's relatives before speaking with her. Tanksley did not request to see or speak with any relatives, friends, or an attorney until after the interview, when she asked to speak to her father and her aunt. The investigator told her that her father and her aunt did not want to speak to her.

Tanksley had not been charged when she was interrogated. After the investigator questioned her about the armed robbery, she told him that she thought she was there to talk about her cousin. In response, the investigator told her that she was going to be charged with armed robbery, burglary, and possession of a firearm. He then said that she would actually just be charged with armed robbery because she was a juvenile. She responded, "Armed robbery for what?"

The interrogation about the armed robbery lasted approximately 15 minutes. The record does not indicate that Tanksley had been questioned or refused to answer questions about the armed robbery on any prior occasion, or that Tanksley repudiated her statement. However, she did plead not guilty at trial.

Considering these facts in the context of the *Riley* factors, we note first that Tanksley, a 15-year-old who had dropped out of the ninth grade, had been brought to the Richmond County Sheriff's Office for questioning about her cousin's murder. Even though he knew that Tanksley thought she was going to be questioned about her cousin's murder, the investigator did not tell her what he was going to question her about until after she had signed the *Miranda* waiver. The investigator used an adult *Miranda* waiver form even though he had juvenile *Miranda* waiver forms available. Tanksley did not have a parent present during questioning, and the investigator did not ask her if she wanted to contact a parent or another relative. The investigator did not tell her the substance of the charges against her until after he had finished questioning her about the armed robbery. Considering the totality of the circumstances, the State did not meet its burden of showing that Tanksley's statement was made voluntarily after a knowing and intelligent waiver of her rights. Thus, the trial court erred by admitting Tanksley's statement as evidence at her trial.

The State argues that any error in admitting the statement at issue was harmless. "Although the error is one of constitutional magnitude, it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other

8

properly-admitted evidence or when the evidence against the defendant is overwhelming." *Davidson v. State*, 304 Ga. 460, 470 (819 SE2d 452) (2018) (citation and punctuation omitted). The State contends that the evidence against Tanksley was overwhelming. We disagree.

At trial, the victim testified that all four people who entered his house other than Nero were male. The victim was specifically asked, "Was Samoney Tanskley one of the group?" He answered, "I didn't see her at all." The victim testified that he had picked out of a lineup every person who was at his apartment complex. He was then asked, "But Samoney Tanksley was not one of those; is that correct?" He answered, "Yes, sir. She was not one of them."

Two of Tanksley's co-defendants, Jaques Woodard and Daeshun Ellis, testified at Tanksley's trial. Woodard and Ellis had already pled guilty to the March 5 armed robbery. At Tanksley's trial, Woodard admitted that he was involved in the March 5 armed robbery, but denied that Tanksley was present. Ellis also admitted being involved in the March 5 armed robbery. Like Woodard, Ellis denied that Tanksley was involved in the March 5 armed robbery. The State introduced a transcript of Ellis's sentencing hearing as a prior inconsistent statement. At his sentencing hearing, Ellis had testified that Tanksley was involved in the armed robbery.

9

The State argues that the key piece of evidence that proves Tanksley participated in the armed robbery is video showing what happened after Tanksley's interview. After the investigator left the interview room, Tanksley began yelling at Ellis, who was in the next room. Although the audio is not clear, the State contends that Tanksley yelled, "What you say?" to Ellis, and told him, "They say you had a gun!" and, "We goin' down!" The State contends that Tanksley's shouted conversation with Ellis on the video, which was corroborated by Ellis's testimony at his sentencing hearing, constitute overwhelming evidence of her guilt. Again, we disagree.

Pretermitting whether the portion of the video after the investigator left the room is admissible, we find that the evidence is not overwhelming as to her guilt. Although Tanksley's shouted conversation with Ellis could be viewed by the jury as evidence of her guilt, it is not strong evidence. Even combined with the transcript of Ellis's sentencing hearing, the video showing her conversation with Ellis is not overwhelming evidence of Tanksley's guilt. Woodard and Ellis both denied at trial that Tanksley was involved in the armed robbery. The victim testified that Tanksley was not one of the people who entered his apartment during the armed robbery. The State has failed to prove beyond a reasonable doubt that the erroneous admission of

Tanksley's custodial statement did not contribute to the guilty verdicts, and Tanksley is entitled to a new trial.

*Judgment reversed. Doyle, P. J., and Markle, J., concur*.